UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | |
|---|---|
| NAMI RESOURCES COMPANY, LLC, <br> VINLAND ENERGY EASTERN, LLC, <br> VINLAND ENERGY OPERATIONS, LLC, <br> VINLAND ENERGY GATHERING, LLC, <br> AND TRUST ENERGY COMPANY, LLC <br><br> PLAINTIFFS <br><br> v. <br><br> SOUTH MISSISSIPPI ELECTRIC POWER ASSOCIATION <br><br> DEFENDANT <br><br> Serve:  James N. Compton <br> 7037 Highway 49 North <br> Hattiesburg, MS 39401 | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) CIVIL ACTION NO. _____ <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Nami Resources Company, LLC ("NRC"), Vinland Energy Eastern, LLC ("VEE"), Vinland Energy Operations, LLC ("VEO"), Vinland Energy Gathering, LLC ("VEG"), and Trust Energy Company, LLC ("TEC") (collectively "Plaintiffs"), through counsel, for their Complaint for Declaratory Judgment against the Defendant, South Mississippi Electric Power Association ("SMEPA"), state as follows:

**The Parties, Jurisdiction, and Venue**

1.  NRC is a limited liability company organized and existing under the laws of the Commonwealth of Kentucky with its principal place of business at 2704 Old Rosebud Road, Suite 320, Lexington, Kentucky 40509.  NRC is in the business of owning and operating oil and

gas wells in southeastern Kentucky. NRC is wholly owned by Nami Service Company, LLC, a limited liability company organized and existing under the laws of the Commonwealth of Kentucky. The sole member of Nami Service Company, LLC is Majeed S. "Mike" Nami, a resident of the State of Florida.

2. VEE is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 2704 Old Rosebud Road, Suite 320, Lexington, Kentucky 40509. VEE is wholly owned by Vinland Energy, LLC, a limited liability company organized and existing under the laws of the State of Delaware. The members of Vinland Energy, LLC are Majeed S. "Mike" Nami, the Majeed S. Nami Irrevocable Trust, and the Majeed S. Nami Personal Endowment Fund. The Trustee of the Majeed S. Nami Irrevocable Trust is Ariana Nami, a resident of the Commonwealth of Kentucky. The Trustee of the Majeed S. Nami Endowment Fund is Ariana Nami, a resident of the Commonwealth of Kentucky.

3. VEG is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 2704 Old Rosebud Road, Suite 320, Lexington, Kentucky 40509. VEG is wholly owned by Vinland Energy, LLC.

4. VEO is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 2704 Old Rosebud Road, Suite 320, Lexington, Kentucky 40509. VEO is wholly owned by Vinland Energy, LLC.

5. TEC is a limited liability company organized and existing under the laws of the Commonwealth of Kentucky with its principal place of business at 2704 Old Rosebud Road, Suite 320, Lexington, Kentucky 40509. TEC is wholly owned by Vinland Energy, LLC.

6. Upon information and belief, SMEPA is a non-profit corporation organized and existing under the laws of the State of Mississippi with its principal place of business at 7037

Highway 49 North, Hattiesburg, MS 39401. SMEPA is in the business of providing wholesale electric energy to its eleven member-owned electric power associations, all of which are located in Mississippi, serve member-customers located in Mississippi, and are organized under the laws of the State of Mississippi. At all relevant times herein mentioned, SMEPA owned certain property located Leslie, Bell, Clay, Knox, and Harlan Counties, Kentucky.

7. Jurisdiction of this matter is conferred on this Court by 28 U.S.C. § 1332(a)(1) because the action is between citizens of different states and the matter in controversy exceeds $75,000 exclusive of interest and costs.

8. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the rights, duties, and obligations sought to be defined and declared occurred in this District and because the legal interests at issue relate to real property located in this District.

## A Declaratory Judgment is Warranted

9. This is an action for a declaratory judgment defining and declaring the rights, duties, and obligations by and between the Plaintiffs and SMEPA pursuant to an Oil and Gas Lease (the "Lease") concerning oil and natural gas bearing property located in Leslie, Bell, Clay, Knox, and Harlan Counties, Kentucky. A true and correct copy of the Lease is attached as **Exhibit A**.

10. The Plaintiffs' request for a declaratory judgment is proper under 28 U.S.C. § 2201 because it will resolve an actual and justiciable controversy between these parties.

11. On March 21, 2012, counsel for SMEPA wrote to Plaintiffs' counsel advising that "no later than April 13, 2012" he would file against these Plaintiffs a lawsuit concerning issues related to the Lease. Counsel also demanded that the Plaintiffs execute a "litigation hold" in

anticipation of the threatened legal action. A true and correct copy of this correspondence is attached as **Exhibit B**.

12. The Plaintiffs have no liability to SMEPA with regard to the Lease or any transaction or occurrence related thereto. SMEPA's threatened lawsuit is baseless.

13. Accordingly, this is a real, actual and justiciable controversy that is ripe for resolution. This Court's declaration of the parties' rights, duties, and obligations with regard to the Lease and related issues will finally determine this dispute by resolving all claims threatened by SMEPA.

## The Background Facts

**A.  The Lease**

14. On April 20, 1994, SMEPA, as Lessor, and AKS Energy Corporation, as Lessee, executed the Lease, pursuant to which SMEPA leased oil and gas reserves on certain property in Leslie, Bell, Clay, Knox, and Harlan Counties, Kentucky.

15. Section 12 of the Lease provides that the Lessee may not assign the Lease without the prior written consent of the Lessor. Upon any approved assignment, "all of Lessee's liabilities and obligations hereunder shall thereupon cease and terminate entirely as to the parts assigned, except as to such rent/royalty as is due and payable at the time of such assignment."

16. On August 31, 2000, Miller Petroleum, an assignee of AKS Energy Corporation's interest in the Lease, with SMEPA's consent, assigned all of its rights and interest as Lessee to NRC.

17. On April 16, 2007, NRC, with SMEPA's consent, assigned all of its rights and interest as Lessee to VEE and TEC. A true and correct copy of the Consent Agreement between and among SMEPA, NRC, VEE, and TEC is attached as **Exhibit C**.

4

18. Since August 31, 2000, and at all times relevant to this dispute, SMEPA has been the sole Lessor under the Lease and NRC, VEE, and/or TEC have been the only Lessees.

19. Pursuant to Section 2 of the Lease, the Lessee (NRC, VEE or TEC) is required to pay a royalty to the Lessor (SMEPA) "at the rate of one-eighth (1/8) of the actual proceeds received by the Lessee at the Wellhead" (the "Royalty"). Section 2 also provides that the "Royalty payments shall constitute the entire consideration to Lessor for such gas, including the gasoline and other contents thereof."

20. Sections 2 and 11 of the Lease require SMEPA to "pay its proportionate share of all excise, depletion, privilege and production taxes now due or hereafter levied, assessed or charged on oil or gas produced from said premises" and permit the Lessee to deduct SMEPA's proportionate share of such taxes from the Royalty paid to SMEPA.

**B.   The 2006 Resolution of SMEPA's Claims Concerning Underpayment of Royalties**

21. In late 2005, at which time NRC was the Lessee, SMEPA questioned NRC's royalty calculations.

22. NRC conducted an internal investigation and hired an independent accountant to audit the royalty calculations. Based on this audit, NRC discovered that it had inadvertently miscalculated (and consequently underpaid) royalties owed to SMEPA since 2000.

23. On September 19, 2006, representatives of SMEPA and NRC met in SMEPA's Hattiesburg, Mississippi headquarters to discuss and resolve issues related to the acknowledged underpayment.

24. NRC and SMEPA reached an agreement during this meeting that the matter would be resolved if NRC made corrective payment(s) to reimburse SMEPA for the calculated underpayment, with interest.

5

25. NRC presented a significant amount of documentation to substantiate its calculation of the underpayment and offered SMEPA a payment for the amount calculated to be the royalty underpayment. SMEPA requested additional information to further validate the calculation.

26. On November 7, 2006, NRC submitted the requested additional data, including final documentation from the external auditor, to SMEPA by email. NRC's cover message stated: "Unless you have comments to the work performed, we will cut the check to SMEPA for $155,584.33 plus interest at 6% p.a. – in total $181,756.67 and you should have it by next week." A true and correct copy of this correspondence is attached as **Exhibit D**.

27. Later that day, SMEPA replied to NRC's message by thanking NRC for the updated information and requesting that NRC "proceed to issue the payment to SMEPA in the amount listed below ($181,756.67)."

28. On November 17, 2006, SMEPA received a check from NRC for the amount of underpayment agreed to by the parties. SMEPA accepted the payment by the endorsing and depositing the check, which cleared NRC's bank account. A true and correct copy of the canceled check for $181,756.67 is attached as **Exhibit E**.

29. In addition to the parties' agreement to resolve all claims related to the underpayment, NRC sought a release from SMEPA. SMEPA declined to sign a release because no legal action had been filed prior to the resolution of the issue.

30. The parties' mutual understanding that a resolution had been reached was confirmed on April 16, 2007, when SMEPA consented to NRC's assignment of its rights and interest under the Lease to TEC and VEE.

31. Based on information and belief on May 8, 2007 SMEPA transferred it rights and interests in the Lease and underlying properties to non-party West Alabama Investors, LLC.

32. Since 2007, TEC and VEE have performed the Lease in accordance with its stated terms and conditions.

**C. SMEPA's Threat of Litigation**

33. In December 2011, during the latter stages of recent litigation between these Plaintiffs and a third party, Asher Land & Mineral, Ltd. ("Asher") in Bell Circuit Court, counsel for Asher communicated with Marcus Ware, the Assistant General Manager of SMEPA, to solicit Mr. Ware's participation as a trial witness on behalf of Asher.

34. Upon information and belief, Mr. Ware and Asher's counsel also discussed the prospect of SMEPA filing a lawsuit against these Plaintiffs alleging substantially similar claims to those filed by Asher.

35. Despite being beyond the subpoena power of the court, Mr. Ware, a resident of Mississippi, traveled to Kentucky and testified on Asher's behalf during the trial held March 6, 2012 through March 15, 2012.

36. On March 21, 2012, less than one week after the Asher trial concluded, counsel for Asher sent an email to Plaintiffs' counsel confirming his representation of SMEPA and threatening to assert substantially similar claims to those filed by Asher:

> Please be advised that SMEPA has retained me to file an action against NRC, VEE, VEO, VEG, and TEC. In that action, SMEPA will assert all the claims asserted by the Fifth Amended Complaint filed in the Asher case, with the exception of the conversion claim. The SMEPA complaint will be filed by no later than 4/13/12, just days before the five year statute of limitations runs as to fraudulent conveyance claims with respect to the NRC "restructuring" which resulted in NRC conveying a material portion of the assets to entities owned and controlled by Majeed S. Nami for (in his own words) "no consideration."

(*See* **Exhibit B**.)

7

37. The Fifth Amended Complaint referenced by the email asserted four principal claims against NRC: (a) breach of contract, (b) fraud, (c) negligent misrepresentation; and (d) conversion and sought compensatory and punitive damages. The Complaint also asserted fraudulent conveyance claims against NRC, VEE, VEO, VEG, and TEC related to a 2007 reorganization of NRC's business again seeking compensatory and punitive damages.

38. In the alleged similar Asher Bell Circuit Court action, Asher sought compensatory damages in excess of $1.3 million and punitive damages of $10 million based upon the alleged underpayment of royalties for 24 wells. Comparatively, Plaintiffs operated approximately 100 wells on the SMEPA Lease. Given that the same counsel who asserted the Asher's claims has threatened suit on behalf of SMEPA on the same issues under the larger SMEPA Lease, Plaintiffs reasonably believe that the actual amount in controversy is far in excess of $75,000, exclusive of interest and costs.

39. NRC (and all of these Plaintiffs) deny that any of them breached the Lease with SMEPA. Based on the 2006 agreement reached between NRC and SMEPA regarding underpayment of royalties, SMEPA cannot prove a breach of contract claim or overcome the Plaintiffs' affirmative defenses, including accord and satisfaction, set-off, waiver, estoppel, laches, and all other legal and equitable defenses that apply.

40. NRC (and all of these Plaintiffs) deny that any of them fraudulently or negligently misrepresented any material facts to SMEPA. These tort claims will likely not survive a motion for summary judgment because all of SMEPA's claims arise out of its contractual relationship with NRC, triggering the economic loss doctrine, the prohibition against double recovery and/or duplicative damages, and all other legal and equitable principles barring recovery of tort damages for economic damages stemming from an alleged breach of contract.

41. All Plaintiffs deny that NRC's 2007 corporate reorganization and related transactions constitute a fraudulent conveyance. When the reorganization occurred in April 2007, NRC reasonably believed that it had resolved all known issues with SMEPA in November 2006. Moreover, on April 16, 2007 SMEPA executed a Consent Agreement specifically consenting to NRC's assignment of its right and interest under the Lease to TEC and VEE. SMEPA cannot prove a fraudulent conveyance because it cannot identify a single badge of fraud suggesting that NRC's reorganization was engineered specifically to hinder or delay SMEPA or any other unknown creditor.

## COUNT I – DECLARATORY JUDGMENT

42. The Plaintiffs re-allege and incorporate by reference the above allegations as if set out fully in this paragraph.

43. Based on the foregoing, a real, actual and justiciable controversy now exists, and will continue to exist, between these Plaintiffs and SMEPA regarding the parties' rights and obligations under the Lease and the viability of the contract and tort claims threatened by SMEPA.

44. This Court has proper jurisdiction over this matter and statutory authority to resolve this controversy by Declaratory Judgment.

45. The Plaintiffs are entitled to a Declaratory Judgment declaring that SMEPA has been properly paid all royalties owed to it under the Lease and Kentucky law.

46. The Plaintiffs are entitled to a Declaratory Judgment that SMEPA's threatened breach of contract claims are meritless.

47. The Plaintiffs are entitled to a Declaratory Judgment declaring that SMEPA's threatened tort claims, including fraud, negligent misrepresentation, and fraudulent conveyance, are meritless.

WHEREFORE, the Plaintiffs, NRC, VEE, VEO, VEG, and TEC, respectfully request Judgment in their favor on this Complaint for Declaratory Judgment against the Defendant, SMEPA, as follows:

    A.    On Count I of the Complaint, a Declaratory Judgment of this Court declaring:

        i.   SMEPA has been properly paid all royalties owed to it under the Lease and Kentucky law;

        ii.  SMEPA's threatened contract claims are meritless; and

        iii. SMEPA's threatened tort claims are meritless;

    B.    A Judgment that the Plaintiffs may recover their costs expended herein, including reasonable attorneys' fees; and

    C.    Such other and further relief to which the Plaintiffs may appear entitled.

Respectfully submitted,

/s/ Ben T. Keller
Donald J. Kelly
WYATT, TARRANT & COMBS, LLP
500 West Jefferson Street, Suite 2800
Louisville, Kentucky 40202-2898
(502) 589-5235 Telephone
dkelly@wyattfirm.com

Ben T. Keller
Justin W. Ross
WYATT, TARRANT & COMBS, LLP
250 West Main Street, Suite 1600
Lexington, KY  40507-1746
(859) 233-2012 Telephone
bkeller@wyattfirm.com
jross@wyattfirm.com

COUNSEL FOR PLAINTIFFS

60147991.4