UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| NAMI RESOURCES COMPANY, LLC, | ) |
| VINLAND ENERGY EASTERN, LLC, | ) Civil No. 12-68-GFVT |
| VINLAND ENERGY OPERATIONS, LLC, | ) **MEMORANDUM OPINION** |
| VINLAND ENERGY GATHERINGS, LLC, and | ) **&** <br> ) **ORDER** |
| TRUST ENERGY COMPANY, LLC | ) |
| Plaintiffs, | ) |
| V. | ) |
| SOUTH MISSISSIPPI ELECTRIC POWER ASSOCIATION, | ) |
| Defendant. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

When a plaintiff's attorney wins almost $4 million in a trial and has an opportunity to exert the same claims against the same defendant in the same court, the old adage questioning, "Why reinvent the wheel?" is particularly apt. Of course, that defendant is anxious to suggest that the case needs a different forum, hoping that will bring about a different result. That basic scenario is pending before the Court. South Mississippi Electric Power Association (SMEPA) and its counsel play the role of plaintiff from above, though herein SMEPA is fashioned as Defendant. Nami Resources Company (NRC) plays the role of defendant, and due to slightly different facts, NRC is joined by several co-defendants. However, because of the posture of this case NRC,

Vinland Energy Eastern (VEE), Vinland Energy Operations (VEO), Vinland Energy Gatherings (VEG), and Trust Energy Company (TEC) are styled as Plaintiffs.

Now before the Court is SMEPA's Motion to Dismiss Plaintiffs' Declaratory Judgment Action. [R. 12.] Plaintiffs' brought this action pursuant to 28 U.S.C. § 2201(a). [R. 1.] Because the Court agrees with SMEPA that discretionary jurisdiction should not be exercised here, its motion will be GRANTED.

**I**

**A**

SMEPA owns real property in several counties in Eastern Kentucky. [R. 1 at 3.] In the mid-1990s, SMEPA entered into a lease agreement in which SMEPA, as lessor, granted a lessee the rights to extract oil and gas reserves from SMEPA's property in exchange for royalty payments. [*Id*. at 4.] NRC obtained lessee rights via assignment on August 31, 2000. [*Id*.] NRC assigned its interest on April 16, 2007 to VEE and TEC. [*Id*.] Shortly thereafter, on May 8, 2007, SMEPA transferred its rights as lessor and its property interests to an unrelated third party. [R. 1 at 7.] That time period—from August 31, 2000 to May 8, 2007—frames this dispute, which is not the first one over this lease.

While NRC was still the lessee, SMEPA challenged NRC's royalty payments. [R. 1 at 5.] Examination was done of NRC's calculations and NRC and SMEPA determined that errors had been made and SMEPA should have received higher payments. [*Id.*] An agreement was reached that $181,756.67 would fairly compensate SMEPA, and that amount was paid and accepted. [*Id.* at 6.]

A March 2012 jury verdict from Bell County Circuit Court in favor of a lessor who also contracted with NRC and sued for an underpayment of royalties prompted


SMEPA to re-examine its previous dispute. [R. 1 at 7; R. 12 at 1-3.] In that case, NRC purportedly admitted to owing Asher Land & Mineral (Asher) $171,098.59 for royalty underpayments. [R. 12 at 2.] Asher apparently believed more was owed and sought additional compensation through trial. [*Id*.] The jury agreed that Asher had been underpaid, and it determined that the proper amount due exceeded $1 million. [R. 12-2 at 5.] Furthermore, over $2.5 million dollars was awarded for punitive damages. [*Id.* at 22.]

On March 21, 2012, six days after the jury returned its verdict in favor of Asher, SMEPA's counsel (who also served as Asher's attorney) emailed Plaintiffs' counsel. [R. 12-4.] SMEPA's counsel announced that a suit was going to be filed asserting three of the same claims as Asher—breach of contract, fraud, negligent misrepresentation— before April 13, 2012. [*Id*.] The email requested that Plaintiffs' counsel retain certain documents from the Asher litigation and asked about service of process. [*Id*.] Plaintiffs' filed the complaint initiating this action on March 30. [R. 1.] Plaintiffs' federal complaint argues that declaratory judgment is due because SMEPA has been paid all the royalties it is owed and the breach of contract claim and tort claims SMEPA provided notification of are "meritless." [*Id*. at 9-10.]

As promised, SMEPA filed a complaint in Bell Circuit Court in which four other parties joined as co-plaintiffs on April 13. [R. 9-1.] Twelve counts were brought in that action. [*Id*.] SMEPA asserts three claims individually. [*Id*.] Those same three claims are brought by Medina Royalties (Medina) and Compass Royalty Management (Compass) and by Kirby Smith, III and Donna E. Smith. [*Id*.] The underlying facts differ somewhat for SMEPA's claims, Medina and Compass's claims, and the Smiths' claims, but the

defendants' alleged behaviors giving rise to the claims are largely static. SMEPA, Medina, Compass, and the Smiths also assert three claims together. [*Id.*]

**B**

Plaintiffs brought this action pursuant to 28 U.S.C. § 1332. SMEPA is identified as a Mississippi resident. [R. 1 at 2-3.] NRC is a limited liability company owned by Nami Service Company, LLC, which has one member whose domicile is Florida. [*Id*. at 1-2; *see Homfeld II, LLC v. Comair Holdings, Inc*., 53 F. App'x 731, 732 (6th Cir. 2002) (holding that LLC citizenship is determined by the citizenship of each of its members).] VEE, VEG, VEO, and TEC are limited liability companies owned by Vinland Energy LLC, whose members are residents of Florida and Kentucky. [*Id*. at 2; *see SHR Ltd. P'ship v. Braun*, 888 F.2d 455, 457 (6th Cir. 1989) (citing *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458 (1980) for the proposition that trustees' citizenship is determinative of the citizenship of a trust); *see also Gen. Ret. Sys. of Detroit v. UBS*, 2010 WL 5296957, at *2-3 (E.D. Mich. Dec. 20, 2010) (citing other sources).]

The amount in controversy requirement is measured by the value of the object of the litigation in declaratory judgment actions. *Northup Properties, Inc. v. Chesapeake Appalachia*, LLC, 567, F.3d 767, (6th Cir. 2009) (quoting *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 347, 97 S.Ct. 2434 (1977)). Under this approach, the amount of controversy should be determined "from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect." *Woodmen of the World/Omaha Woodmen Life Ins. Soc. v. Scarbo*, 129 Fed.Appx. 194, 195-96 (6th Cir. 2005) (internal quotations and citations omitted). To determine the value of this controversy, the Court examines the amount alleged in the complaint. *Klepper v. First*

4

*Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990). "In a federal diversity action, the amount alleged in the complaint will suffice unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount." *Id.* Plaintiffs have offered sufficient proof that the amount in controversy exceeds $75,000. [R. 1 at 8.]

**II**

Having found that subject matter jurisdiction exists, the Court now must determine whether it should exercise jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a). The exercise of jurisdiction under the Act is not mandatory. *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942); *see also Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004). "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). In other words, although the District Court has jurisdiction of the suit brought under the Declaratory Judgment Act, it is "under no compulsion to exercise that discretion." *Brillhart*, 316 U.S. at 494.

Plaintiffs' ostensibly seek "a declaratory judgment defining and declaring the rights, duties, and obligations by and between Plaintiffs and SMEPA pursuant to an Oil and Gas lease." [R. 1 at 3.] What is actually sought is a federal forum in which affirmative defenses to SMEPA's claims can be asserted. [*See id*. at 8 para. 39 ("SMEPA cannot prove a breach of contract claim or overcome the Plaintiffs' affirmative defenses, including accord and satisfaction, set-off, waiver, estoppel, laches, and all other legal and equitable defenses that apply."); *id*. at 8 para. 40 (SMEPA's "tort claims will likely not survive a motion for summary judgment because all of SMEPA's claims arise out of its

contractual relationship with NRC, triggering economic loss doctrine, the prohibition against double recovery and/or duplicative damages, and all other legal and equitable principles barring recovery of tort damages for economic damages stemming from an alleged breach of contract.").]

In light of those issues, the Court must determine "whether the judgment will serve a useful purpose in clarifying and settling the legal relationships in issue and whether it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Brotherhood Mut. Ins. Co. v. United Apostolic Lighthouse, Inc.*, 200 F. Supp.2d 689, 692 (E.D. Ky. 2002) (citations omitted) (internal quotation marks omitted). A full inquiry into all relevant considerations must be made, taking into account the following five factors:

> (1) whether the declaratory action would settle the controversy;
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
> (5) whether there is an alternative remedy which is better or more effective.

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (citations omitted). These factors are useful benchmarks and must be considered, but the ultimate decision about whether to accept jurisdiction is left to the "unique and substantial" discretion of the Court. *Id*. at 563 (quoting *Wilton*, 515 U.S. at 286).

As to the first factor, accepting jurisdiction would not settle the controversy, and in fact, it could only complicate this situation. There is an action pending in state court between SMEPA and Plaintiffs. That action will continue regardless of what happens

here.  The issues pending before this Court are intertwined with SMEPA's claims in state court, and are even identified by Plaintiffs as affirmative defenses to those claims. [*See* R. 1 at 8.]  This situation is more akin to *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (affirming denial of jurisdiction) than *Northland Ins. Comp. v. Stewart Title Comp.*, 327 F.3d 448 (6th Cir. 2003) (affirming acceptance of jurisdiction.  In *Grand Trunk*, the Sixth Circuit held that a pending state court suit involving the same parties as in the federal action would be affected if a federal court accepted jurisdiction.  Furthermore, the effect of any ruling by the federal court would be unclear. *Grand Trunk*, 746 F.3d at 326.  Conversely, Northland Insurance Company was not involved in a state court action and sought a declaration from federal court that it had no duty to defend the parties it insured in the state action.  The federal court could rule on that discrete issue alone. *Northland Ins. Comp.*, 327 F.3d at 453-54.  The clear implication from the Sixth Circuit's *Grand Trunk* decision is that when two controversies have interrelated facts and parties, the court should weigh this as a factor against accepting jurisdiction.

      The second factor also weighs strongly in favor of SMEPA's position. *AmSouth Bank v. Dale*, 386 F.3d 763, 786-88 (6th Cir. 2004), engages in an extensive discussion about why declaratory judgment is rarely appropriate under this type of factual circumstance.  The "general rule" that was cited states, "when a putative tortfeasor sues an injured party for a declaration of nonliability, courts will decline to hear the action in favor of a subsequently-filed coercive action by the natural plaintiff." *Id*. at 786 (citation omitted) (internal quotation marks omitted).  One important exception to that rule is when

an additional injury might occur to the declaratory plaintiff while waiting for the natural plaintiff to sue—such as "potential accrual of damages." *Id*.

In spite of Plaintiffs' protestations to the contrary, [R. 13 at 6] such a harm does not exist here. As between Plaintiffs and SMEPA, their relationship extended from around 2000 through 2007. The actions that might give rise to damages, at least in large part, occurred during that time period. For that reason, and due to the analysis offered in *AmSouth*, the Court holds that the general rule should be followed.

Plaintiffs present a long argument for why the filing of this action does not constitute a "race for res judicata" or procedural fencing, which federal courts should discourage, but it is unconvincing. Instead, at least two indicators suggest that Plaintiffs engaged in a "race to the courthouse," and thus, the third factor also weighs in SMEPA's favor.

First, the timing of the filing of this action is notable. This federal action was filed nine days after SMEPA notified that it planned on filing suit, and fourteen days before SMEPA actually filed. *AmSouth* instructs that a skeptical eye should be cast upon actions filed in this way: when "a declaratory action whose only purpose is to defeat liability in a subsequent coercive suit [is filed], no real value is served by the declaratory judgment except to guarantee the declaratory plaintiff her choice of forum—a guarantee that cannot be given consonant with the policy underlying the Declaratory Judgment Act." *AmSouth*, 386 F.3d at 788 (quoting several cases wherein similar conclusions are reached).

Second, Plaintiffs include parties with Kentucky residency. In the state case, at least two of the plaintiffs also possess Kentucky residency.[1] The tactic of notifying Plaintiffs via email about a potential suit may warrant some criticism by civil procedure scholars, but the action SMEPA forewarned of appeared to lack federal jurisdiction and the potential thereof.[2] Plaintiffs' temporarily outmaneuvered SMEPA by suing it alone and thereby achieving diversity jurisdiction. Plaintiffs' did not sue the Smiths, who were Kentucky residents and lessors during the same time as SMEPA, nor did they sue Medina or Compass. Though Plaintiffs' actions may be shrewd, they undermine the purpose of the Declaratory Judgment Act. *Id.* at 788-89, 790 ("It seems clear that the [declaratory plaintiffs] filed declaratory actions not to resolve issues of liability that were hindering their normal behavior, but instead to gain a procedural advantage.").

The fourth factor requires the Court to consider whether the declaratory action would increase the friction between federal and state courts. As the Sixth Circuit recognized in *Flowers*, the Supreme Court has cautioned that "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in gratuitous interference, if it permitted the federal declaratory action to proceed.'" *Flowers*, 513 F.3d at 559 (quoting *Wilton*, 515 U.S. 283). Three sub-factors have been identified to help courts ascertain the amount of encroachment:

> (1) whether the underlying factual issues are important to an informed resolution of the case;

---

[1] The Smiths are a married couple who both reside in Kentucky. [*Id*.]Medina and Compass are both LLCs but it is not apparent how many members each LLC has nor where any of those members maintain residency. [*See* R. 9-1 at 3.]

[2] Plaintiffs claim that SMEPA has joined Kentucky parties as defendants and plaintiffs solely to defeat diversity jurisdiction. [R. 13 at 11.] Plaintiffs stated they had a motion to sever pending before the state court at the time their Response was filed in July 2012. [*Id*.] As of March 2013, Plaintiffs have not filed an update indicating whether that motion was decided in their favor.

>    (2) whether the state trial court is in a better position to evaluate those
>    factual issues than is the federal court; and
>    (3) whether there is a close nexus between the underlying factual and legal
>    issues and state law and/or public policy, or whether federal common or
>    statutory law dictates a resolution of the declaratory judgment action.

*Id.* at 560.

With regard to the first sub-factor, the *Flowers* court clarified that it "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Id.* Plaintiffs did not address the first issue in their Response. However, Plaintiffs' Complaint requests a declaration that "SMEPA has been properly paid all royalties owed to it under the Lease and Kentucky law." [R. 1 at 9.] To reach a conclusion on that issue will require contract interpretation that will be governed by Kentucky law. Many of these issues were addressed in the Asher litigation, which resulted in a jury having to resolve disputed fact issues. [*See* R. 12 at 2; R. 12-5, 12-6.] Moreover, many of those same issues will need resolution in SMEPA's state court action. [*See* R. 12-4.] All signs point to this weighing in favor of dismissal.

The second sub-factor also suggests that jurisdiction should be declined. Plaintiffs point out that this factor should bear less weight "when the state law is clear" but neglect to include the conjunction and rest of the sentence, "and when the state court is not considering the issues." *Flowers*, 513 F.3d at 560. Here, the state court is currently considering the facts and issues between these parties, and it has considered similar issues within the last year.

The third sub-factor also weighs in favor of dismissal. State law is exclusively at issue and would be determinative in both this action (were the Court to accept

10

jurisdiction) and the related state court action. In the Asher action, state law was critical in the court's summary judgment decisions, and federal law plays no significant role.

Thus, all three factors weigh in favor of declining jurisdiction. Quite simply, assuming jurisdiction would cause friction between the state and federal court systems.

Finally, the fifth factor requires the Court to examine "whether there is an alternative remedy which is better or more effective." In *AmSouth*, the existence of a coercive action supported the court's finding that federal jurisdiction should not be accepted. *AmSouth*, 386 F.3d at 791. The actions making up this litigation took place in the past, negating the value of a declaratory judgment, and Plaintiffs will have full opportunity to present their affirmative defenses in the other pending action. Plus, because state law is at issue, a state court is better-positioned to apply that law. *Bituminous Cas. Corp.*, 373 F.3d at 816. Proceeding in state court would therefore likely be a better or more effective remedy than a declaratory action in federal court, and the fifth factor weighs against the exercise of jurisdiction.

### III

In reliance on the Court's "unique and substantial" discretion, *Flowers*, 513 F.3d at 563, SMEPA's Motion to Dismiss will be granted. No factor strongly supports the Court accepting jurisdiction over this action, and several, if not all, of the factors favor letting the Kentucky state court decide this dispute. Accordingly, and the Court being sufficiently advised, it is **HEREBY ORDERED** as follows:

(1) Defendant SMEPA's Motion to Dismiss Plaintiffs' Declaratory Judgment Action [R. 11] is **GRANTED**; and

    (2)    Plaintiffs' Complaint for Declaratory Relief [R. 1] is **DISMISSED** without prejudice; and

    (3)    Plaintiffs' Motion for Leave to Amend Complaint [R. 13 at 7 n.3] is acknowledged by the Court.  Because this motion was not filed as a discrete motion, in addition to it being placed in a footnote, the Court will refrain from ruling on it and allow Plaintiffs fourteen (14) days from the date of entry of this Order to supplement the motion as desired and tender an actual Amended Complaint.  Upon that filing, the response and reply periods prescribed by Local Rule 7.1(c) will commence.

    (4)    SMEPA's Motion to Hold Deadlines in Abeyance, [R. 16] joined by Plaintiffs, [R. 18] is **GRANTED**.

This 29th day of March, 2013.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge